Eli Witkin, Respondent, *v.* Charles D. Beckwith, Inc., and Another, Appellants.

First Department, May 12, 1933.

*Walter G. Evans* of counsel [*Evans, Hunt & Rees*, attorneys], for the appellants.

*Moses Feltenstein* of counsel [*Sidney J. Feltenstein* with him on the brief; *Feltenstein & Rosenstein*, attorneys], for the respondent.

Sherman, J. The judgment here is in negligence and rests upon a jury's verdict awarding plaintiff a considerable sum in damages. Two prior trials resulted in disagreements. We are now asked to direct a fourth trial. Plaintiff's witnesses, so it is claimed, have testified to details contradictory of earlier versions. Plaintiff himself did not testify. These circumstances, it is said, taint the verdict, demonstrate that the believable evidence points to a conclusion favorable to defendants and require a new trial. That a question of fact exists which must be resolved by a jury is conceded.

Defendants do not dispute the serious injuries to plaintiff, which affected his mind and speech mechanism through brain hemorrhages and paralyzed him in several respects, apparently constituting a valid reason for the failure to call him as a witness. In any event, such failure of the plaintiff to take the witness chair might be a proper subject of comment to the jury; it does not, however, supply any basis for the reversal of the verdict by this court, when the facts of the accident are described by other eye-witnesses.

About dusk, while plaintiff was walking across the plaza made by the intersection of three streets, Southern boulevard, Prospect avenue and East One Hundred and Forty-ninth street, in the Bronx, he claims to have been struck by appellants' automobile. Two lines of street car tracks unite where East One Hundred and Forty-ninth street runs into Southern boulevard. Plaintiff, an elderly man, was crossing from the southwest corner of One Hundred and Forty-ninth street and Southern boulevard to the southeast corner; his course was no other than the customary one pursued by pedestrians and it involved his traversing the plaza for a distance of about seventy-five feet from the sidewalk to the place where he was injured. There is ample evidence that the traffic lights were in his favor when he set out to walk across that space. All agree that he reached what is termed a " safety zone " marked by three stanchions, close to and paralleling the tracks on Southern boulevard. This space was one of safety, provided vehicles traveled in the car tracks, but was not such if an approaching south-bound auto straddled the westerly rail of the south-bound track. Plaintiff attempted to cross the tracks and was struck by the defendants' automobile while on the easterly rail of the south-bound tracks, which he had very nearly crossed, as shown by the fact that he fell in the " dead space " between the two tracks according to the uncontradicted evidence.

The theories presented at trial are in direct conflict, defendants claiming now that plaintiff walked into the side or rear of the car after it had passed him, and plaintiff's witnesses asserting that he was struck by the front of the car just as he had nearly completed passing over the south-bound track. The jury have rejected defendants' version and accepted plaintiff's, as they had a right to do.

Although witnesses on either side seem to have modified or changed their testimony in certain respects (to relate which in detail would unduly lengthen this opinion), it was for the jury to say whether or not such contradictions were indicative of falsehood or were due to confusion and misunderstanding such as might have

arisen during their examinations and cross-examinations upon three trials.

The testimony of the driver of the auto and of the two passengers who sat on the rear seat was to the effect that the car had actually passed plaintiff, who was seen by them to be standing erect in the "safety zone." Those in the rear seat assert that they looked through the rear right-hand window and saw him so standing erect as the car passed. Their testimony indicated that there was no contact and that this auto was not the cause of the injury. After these three witnesses had testified, the driver was recalled and confronted with the report made by him to the Motor Vehicle Bureau in which the injury to plaintiff was mentioned and it was stated that he had walked into the rear right side of the car.

An appellate court cannot say that the jury should have accepted the defendants' present contention that plaintiff actually walked into the rear of the car, in preference to that presented by plaintiff, which indicated that plaintiff was in full view of the chauffeur of the approaching car, so that it might have been reasonably controlled in such a way as to have avoided knocking him down upon the further rail of the car track upon which the automobile was proceeding. There is, moreover, evidence that the defendants' car in approaching the safety zone had at first appeared to be headed to the west of the stanchions, when it sharply turned upon the car track to proceed to the east of the so-called safety zone, straddling the westerly rail, swerving, and thereby causing the accident. Much of this indeed appears in the testimony adduced by defendants, who admit that the car swerved to the left. These and other circumstances, such as the speed of the car, are present, and warranted the jury in exonerating plaintiff from contributory negligence, and convicting defendants of negligence.

The solution of the controversy was clearly for them and their verdict may not be disturbed where there is nothing to indicate that they were actuated by passion, prejudice or improper appeal.

The charge of the court was lengthy. Some parts now claimed to be erroneous, in point of fact, were not even excepted to. Many requests made by defendants, corrective of statements claimed to be erroneous, were charged by the court, so that the charge, when read as a whole, correctly defined the issues of fact and stated the applicable law.

The judgment appealed from should be affirmed, with costs.

FINCH, P. J., and O'MALLEY, J., concur; MERRELL and MARTIN, JJ., dissent and vote for reversal and a new trial.

MARTIN, J. (dissenting). This judgment entered after a third trial and after two juries had disagreed, illustrates the efforts that

are sometimes made in personal injury actions to obtain a verdict and the injustice that may result.

If there is any force to the argument that because this is the third trial the verdict should be sustained, then a judicial proceeding becomes a contest of endurance instead of a means to administer justice. Such an argument has frequently been made in cases where the plaintiff obtained a verdict several times, but it has no place in a case where there have been two disagreements or in a case such as we now have before us for consideration.

This action was brought to recover damages for personal injuries sustained by plaintiff and alleged to have been caused by the negligent operation of an automobile owned by defendant Charles D. Beckwith, Inc., and operated by the individual defendant, Oliver Morse Beckwith. At the time of the accident the plaintiff was fifty-three years of age. He did not take the witness stand or submit to cross-examination during the trial, nor was any reason given for the failure of the plaintiff to testify. To dispose of this case by merely stating that a question of fact is involved overlooks the fact that such a contention may be made in any case. The overwhelming evidence and physical facts disprove the plaintiff's contention.

The plaintiff was injured while crossing the large plaza at the intersection of Southern boulevard, Prospect avenue and One Hundred and Forty-ninth street, the Bronx. He was proceeding in an easterly direction from the southwest corner of One Hundred and Forty-ninth street and Southern boulevard toward the southeast corner of One Hundred and Forty-ninth street and Southern boulevard. When he started to cross, the traffic lights were in his favor, but, while walking, the lights changed, so that north- and south-bound traffic was moving before he had completely crossed the plaza. He reached a safety zone near the westerly side of the south-bound trolley tracks on Southern boulevard, passed through the zone and proceeded to cross the tracks and reached the easterly rail of the south-bound trolley tracks when he came in contact with the rear part of an automobile owned by the defendant.

The testimony upon which this judgment is based was given by three alleged eye-witnesses to the accident. It is worthy of note that plaintiff's witnesses, in several instances, attempted on the last trial to make their testimony more favorable to the plaintiff than it had been on a former trial.

The first witness for the plaintiff was Fred Bernadac, the driver of a gasoline truck. He testified that he was standing behind his truck on the southwest corner of Southern boulevard and One Hundred and Forty-ninth street, delivering gasoline to the station

on that corner; that he observed the plaintiff standing on the corner, looking up and down the street and noticing that the traffic light favored the pedestrian he told the plaintiff to " go ahead " and that plaintiff then proceeded in an easterly direction; that he then turned his attention to his truck and the next time he looked in the direction in which the plaintiff had walked he saw the plaintiff struck by the right front corner of an automobile which then swerved to the left and turned in a semicircle and came to a stop at the southerly end of the gasoline station about two hundred feet south of One Hundred and Forty-ninth street. The witness picked up the plaintiff, who was lying *in the space* between the north- and southbound trolley tracks.

On cross-examination this witness was asked to tell more specifically what part of the car hit the plaintiff, whether it was the bumper, mudguard, radiator or the running board. He said he could not tell what part struck the man except that it was the right front corner. His testimony on this point is, in part, as follows: " Q. And you said the right front corner of the car was the part that came in contact with him. Can you tell us more specifically, was it the bumper or a mudguard or the radiator or the running board or what part of the car was it? A. The right front corner is all I can say. Q. You cannot say whether it was the mudguard? A. I could not tell which part first. Q. You cannot say whether the mudguard pushed him at all or not? A. I can't say. The right front corner. Q. Would you say the wheel touched him? A. The right front corner. Q. Would you say the wheel touched him? A. I can't say nothing but the right front corner. *I couldn't say whether a bumper hit him first or what hit him first.*"

The witness estimated the speed of the defendants' car as thirty to thirty-five miles an hour. When questioned as to what time he made this estimate of the speed of the car he said it was made at the time he first saw the car, and he then said he first saw the car at the time of the accident. He had previously stated to the court and jury that he had seen the car just before the accident. His testimony on this point is as follows: " Q. You did not see the automobile before the time it just came in contact with him? A. Right before it came in contact. * * * Q. When you first saw it, it was right at the time of the collision, of the crash, that is of the accident, was it not? A. That is right."

The witness Harold Elfin testified that he was standing on the southeast corner of One Hundred and Forty-ninth street and Southern boulevard in front of a cafeteria waiting for a northbound trolley on Southern boulevard. He saw the plaintiff approaching him, walking in an easterly direction; saw him several

times but did not continue to look at him. He then heard the sudden turn or swerve of an automobile going in a southerly direction on Southern boulevard; that the car had been on the westerly side of the trolley tracks and after it swerved to the left it was on the trolley tracks; that at the time the car first swerved the plaintiff was at the easterly rail of the south-bound tracks; that the front right end of the car struck the plaintiff and he fell between the *north-* and *south-bound* trolley tracks.

On cross-examination this witness was confronted with testimony he had given on a previous trial of this action. He then admitted that his *previous testimony was true* and that the testimony given at this last trial was incorrect. He admitted that he did not see the car before it was on the tracks; that he stated on the former trial he could not say whether the front left, front center or the front right end of the car struck the man; that the reason for his not being able to tell was due to the fact that the automobile was between him and the plaintiff when plaintiff was struck. Nevertheless, on this trial he testified that the front right corner of the car struck the man. He finally admitted that testimony was incorrect.

The attorney for the defendants then brought out the fact that what really attracted this witness' attention was the noise of the collision. He testified as follows: " Q. As a matter of fact, what first attracted your attention to this accident was the noise of somebody or something being hit, is not that so? A. No. Q. Isn't that what attracted your attention? A. No. Q. I do not mean to the car before, but I mean the first you knew of anybody had been hit was that you heard it rather than saw it. A. I saw it. Q. Did you not hear it first? A. At first — both heard and saw it. Q. You heard it first, did you not? A. Yes. Q. That is what you said on the other trial, page 105. Do you remember saying this? The court asked you a question: ' The Court: After it swerved on the north-bound tracks, what happened to the car? The witness: What is that? What happened after it swerved on the north-bound tracks? I heard a noise as though somebody was hit.' That is what first attracted your attention, was it not, hearing that noise? A. Well, after he swung onto the tracks, yes. Q. And then after you heard the noise you saw some part of a person's clothing in the air, did you not, falling, is not that right? A. Right. Q. That is what you saw? A. Yes, sir. Q. As you said here on the other trial; see if you said this — * * * Q. Now you said — see if I wrote it down right — after the car swung to the left onto the north track you heard a noise of someone being clipped? A. Yes. ' Q. That was the next thing that attracted your attention; that is, you saw the car swing to the left over onto

the other track and then you heard a noise of something, of someone being clipped? A. Yes.' Did you so testify? A. It is down there. It must be. * * * Q. And the next question: ' Q. Then you heard the contact rather than saw it, is that correct? A. Well, the minute I heard that I saw the man's coat flying in the air.' That is the truth, is it not? Mr. Feltenstein: I concede that he testified to that. Just put it right in. Mr. Evans: All right. ' Q. That is, you heard the noise of someone being clipped and you saw the coat flying in the air? A. Yes.' "

The testimony of this witness discloses that he contradicted his testimony on the previous trial by saying that the front right corner of the car struck the plaintiff. He admitted that his previous testimony to the effect *that he did not know* what struck the man, was correct. He admitted that his previous testimony to the effect that he first heard the contact or " clipping " of a man and saw a coat flying in the air was correct; that he did not see the car of the defendant swerve over on the south-bound tracks, but that the first time he saw it, it was actually on the tracks. The latter admission was not brought out until the witness was confronted with his testimony given on the preceding trial.

The testimony of a witness named Michael J. Gaughan, who at the time of this trial was seriously ill, was then read into the record. The testimony so introduced was given by that witness on a previous trial of this action. The witness at the time of the accident was the manager of the gasoline station operated by Sobel Brothers, at One Hundred and Forty-ninth street and Southern boulevard. He stated that he had just left the cafeteria at the southeast corner of One Hundred and Forty-ninth street and Southern boulevard, and was on his way across to the gasoline station; that he saw the plaintiff entering the safety zone on the westerly side of the south-bound tracks; that at that time the witness noticed a south-bound automobile which was south of One Hundred and Forty-ninth street; that the car was to the westerly side of the rails; that he then noticed it make a sudden swerve onto the south-bound tracks; that he heard another noise and saw the plaintiff lying on the ground. He stated, however, that he did not see the contact, as the automobile was between him and the plaintiff.

The plaintiff's son testified to the earning capacity of his father, as well as to the expenses at the Lincoln and Neurological hospitals, his expenses for nurses, doctors and an operation. He also testified to the amount expended on a trip to the country which was taken under the doctor's orders.

A number of doctors testified on behalf of the plaintiff. The injury sustained by plaintiff was said to have caused a condition

of paralysis on his left side, and caused him to be subject to faint
ing spells. *It was nowhere shown that he could not take the witness
stand and testify to the manner in which the accident occurred.*

There is testimony to the effect that an operation was performed
by Dr. Ellsberg of the Neurological Institute; that he removed a
piece of bone about the size of a silver dollar from each side of the
forehead of the plaintiff for the purpose of removing any blood
clots that might be pressing on the brain and thus causing the
paralysis; that after the operation there was no improvement in
the paralytic condition of the plaintiff.

The doctor described the fainting spells as epileptiform convul-
sions. He observed about twelve of these attacks and said that
each lasted about twenty minutes, during which time the plaintiff
became blue and was unconscious.

The testimony of defendants' witnesses fully described the
accident, the surrounding circumstances, *and the fact that the plaintiff
walked into the rear part of the car.*

Oliver M. Beckwith, as a witness for defendants, testified that he
was driving in a southerly direction on Southern boulevard; that
he stopped north of One Hundred and Forty-ninth street because
of the traffic light; that there were a number of other cars there
and that when the light changed to indicate that north- and south-
bound traffic should move he continued south. He stated he was
astride the westerly rail of the south-bound tracks; that he neces-
sarily swerved onto the south-bound tracks just before reaching
the stanchions of the safety zone; *that he observed the plaintiff stand-
ing in the safety zone near the middle of the stanchions;* that defendant
blew his horn and continued along the car tracks; that when the
front of the automobile was about even with the plaintiff the
plaintiff moved toward the car and the defendant then, in order to
avoid striking plaintiff, swerved sharply to the left; that the front
and rear windows of the car passed plaintiff who had not as yet
come in contact with the car. The defendant said he was then
driving between eighteen and twenty-two miles an hour.

Earle Harrison, a witness called by the defendants, testified that
he was seated on the right-hand side of the rear seat of defendants'
car; that he saw the plaintiff standing in the safety zone; that when
defendants' car was within a few feet of him he moved toward the
car and the tracks; that the car then swerved sharply to the left
and that the plaintiff was still erect and had not come in contact
with the car as the rear window passed him. He did not see the
man fall or come in contact with the car.

Clarence Beckwith, who was seated on the left-hand side of the
rear seat of the car, said that the first he saw of the plaintiff was when

the car swerved sharply to the left and went past the plaintiff; that the plaintiff was still erect when the rear window passed him.

The witnesses for the defendants place the plaintiff when they first saw him in a place of safety in the safety zone and testify that he was walking toward the rear end of the car.

The defendants offered in evidence orders of the police department authorizing traffic to pass to the right or left of car safety zones, showing why the car was compelled to turn onto the tracks before it reached the safety zone.

We agree with the appellants' contention that the verdict finding the defendants negligent is contrary to the overwhelming weight of the evidence and that the plaintiff was guilty of contributory negligence; and that there is no reliable evidence showing any negligence on the part of the defendants.

It is also asserted that the court not only erred in its charge to the jury but by an erroneous statement of facts made it impossible for defendants to succeed. The court charged: "You have two stories of how this accident happened. You are told by the plaintiff while he was standing in a place concededly recognized as a place of safety, whether it was a safety zone or not, and while he was not doing anything that would indicate any improper conduct on his part, the defendants' automobile, making swerves that would be confusing to the mind, coming at a speed unjustified, struck him and caused his injury."

The jury was not told anything by plaintiff for he did not take the stand or testify. If the trial justice meant by that statement that the plaintiff's witnesses so testified, he was again in error because there was no such testimony by any witness for the plaintiff. There is no testimony that the plaintiff was struck while standing in a place of safety.

There is no testimony in the record that the car was "making swerves that would be confusing to the mind." The appellants point out that it was not the contention of the plaintiff and that his witnesses did not testify that the plaintiff ever stood in the safety zone; that on the contrary they testified that he was walking and had reached the easterly rail of the south-bound tracks when he was struck. The defendants say that they could not hope for success after the charge of the court.

Over the objection of the defendants the court then charged: "I said if they find that the plaintiff started to cross, as his witnesses testified, while the lights were in his favor, and he was then exercising care in starting to cross, and that the lights changed immediately after, before he reached a place of safety, and the defendant

careless of what his rights were, with him fully in view, struck him with his automobile."

It is appellants' claim that, in addition to being substantially the opposite to the charge set forth above, this statement was also erroneous; that all of the plaintiff's witnesses agreed that the plaintiff, after having started across the large plaza had reached a place of safety — the car stop safety zone — and that the accident happened after he left that place of safety, at which time the defendants say the lights were against him and the plaintiff does not contradict or dispute that fact.

The appellants also claim that the court erred in charging the jury that they must examine with care the testimony of the defendant Beckwith, the driver of the car, to determine if he had given prejudiced or biased testimony because of his interest — it being argued that the court should not have used the word " must," but should have used the words " may examine," to find if there was prejudice.

The final objection was to that part of the charge relating to the probability of the testimony of a witness. The appellants objected to the charge as it was originally given and then the court said: " Yes, I said to you, gentlemen of the jury, that you alone should conclude; that the hesitancy or the glibness of a witness, the intelligence or the stupidity of a witness does not decide the effect of the testimony, but the controlling feature, the controlling fact is the 'probability of the witness' testimony when compared with the occurrence as we know it, as we learn of it from all the testimony given at the trial."

The appellants very properly say that it is for the jury to determine whether they would believe or disbelieve a witness, and why; that they may be guided by the witness' demeanor on the stand and his manner of giving testimony; that it is for the jury and not the court to determine what the feature or fact causing them to believe or disbelieve may be; that the court should not say, as it did upon this trial, that the controlling feature is the probability of the testimony.

The defendants insist that the attitude of the court made it impossible for defendants to succeed, because of the fact that the judge placed them in a very unfavorable light before the jury. The judge intimated that this plaintiff was injured while standing in a place of safety in a safety zone, although nothing of the kind was testified to by anybody. It is also pointed out that the witnesses for plaintiff instead of placing the plaintiff in a safety zone, as stated by the court, all placed him on the car tracks away from the safety zone established for the protection of pedestrians.

Added to this, the defendants point out that the failure of the plaintiff to testify on the third trial was not because of his physical inability to do so, but because he could not explain his actions and evidently did not wish to subject himself to cross-examination by the defendants' attorney. The attempts of the plaintiff's witnesses to add to their testimony on the third trial indicates that somebody appreciated the necessity of supplying just such testimony in the third attempt to make out a case.

We are of the opinion that the verdict is against the overwhelming weight of the evidence; that the judge erroneously charged the jury; that the trial judge unintentionally evinced a decided leaning toward plaintiff and that the plaintiff did not take the stand evidently for the reason that he could not explain his action in leaving the safety zone, when the lights on Southern boulevard were against him and in favor of north- and south-bound traffic, or explain his action in walking into the rear end of the defendants' automobile.

We believe that in the interest of justice there should be a new trial. The judgment should, therefore, be reversed and a new trial ordered.

MERRELL, J., concurs.

Judgment affirmed, with costs.